UNITED STATES *v.* A. H. RINGK & Co. (No. 3073)[1]

United States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Fred J. Carter,* special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument October 3, 1928, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Articles invoiced as telephone notebooks were imported by appellee. These were each about 6 by 9 inches, and fitted with an eyelet for hanging upon the wall. Each contained 12 paper leaves, with cloth, alphabetically lettered, lower margins so arranged that each succeeding leaf projected below its predecessor by the width of its margin. On top of the leaves was a front, cloth covered, padded cover, with the word "Telephone" printed thereon. A stiff, imitation leather covered back was added. Aside from the word "Telephone" and the

---

[1] T. D. 43077.

marginal letters, the only other printing upon the articles were the words "Name" and "No." appearing at the top of each leaf.

The articles were classified by the collector at the port of New York as manufactures of paper not specially provided for, under paragraph 1313 of the tariff act of 1922, and were claimed to be dutiable, in the protest, under paragraph 1310 of said act, as printed matter, either of bona fide foreign authorship or under the classification of "all other" printed matter therein. The court below sustained the protest under the latter claim, and the Government appeals.

This case seems to be controlled by our judgment and opinion in *United States* v. *Field*, 14 Ct. Cust. Appls. 376, T. D. 42031. In the case cited, handkerchief samples bound within covers were involved. Upon the front cover appeared, in printing, a description of the samples within, while each sample had a pasted, printed label thereon, giving the name and describing the character of the sample. These were classified as handkerchiefs under paragraph 1016 and were claimed to be dutiable as printed matter under said paragraph 1310. In passing upon their dutiability under said paragraph 1310, this court, through Barber, J., thus analyzed and subdivided said paragraph 1310:

(1) Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem;

(2) All other, not specially provided for, 25 per centum ad valorem;

(3) Blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem;

(4) Book bindings or covers wholly or in part of leather, not specially provided for, 30 per centum ad valorem;

(5) Books of paper or other material for children's use, printed lithographically or otherwise, not exceeding in weight twenty-four ounces each, with more reading matter than letters, numerals, or descriptive words, 25 per centum ad valorem;

(6) Booklets, printed lithographically or otherwise, not specially provided for, 7 cents per pound;

(7) Booklets, wholly or in chief value of paper, decorated in whole or in part by hand or by spraying, whether or not printed, not specially provided for, 15 cents per pound; * * *.

Thereafter the court said:

Paragraph 1310 of the present Tariff Act shows a legislative intent to establish a new test for classification, that is, *foreign authorship*, for certain articles, and to make specific and definite provision as to others. It is a revision, a substantial reenactment, of part of paragraph 329, and includes merchandise named in other paragraphs of that act. Our first three subdivisions of paragraph 1310 cover substantially the same articles mentioned in the first sentence of paragraph 329. Blank books, slate books, engravings, photographs, etchings, maps, and charts found in that sentence have by Congress been excluded from subdivisions (1) and (2) and placed in subdivision (3), leaving only in subdivision (1) such things as are susceptible of authorship in the sense that word is ordinarily used.

Webster defines "author" as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler," and defines "authorship" as "the quality or state of being an author." There are other meanings given to these words, but we think the foregoing is the sense in which the word "authorship" is used in paragraph 1310. A mere mechanical production, such as the importations here, is not, we think, susceptible of authorship as that word is used in the paragraph.

Subdivision (2) is elliptical. The board filled the ellipsis by inserting the word "books" after "all other," and found the merchandise here to be books.

We are of opinion that Congress intended that the ellipsis might only be filled by inserting therein the articles named in subdivision (1) which, though susceptible of authorship, were not, in fact, of *bona fide* foreign authorship and that no articles not susceptible of authorship should be classified under either subdivision (1) or (2). If such had not been the congressional intent, it was unnecessary to provide *eo nomine* for blank books and slate books in subdivision (3), because if subdivision (2) included all books, regardless of whether or not they were susceptible of authorship, blank books and slate books would have fallen within subdivision (2), the rate of duty thereunder being the same.

We see no reason to depart from the reasoning thus lucidly expressed. In the case at bar similar reasoning is applicable. There is nothing about these telephone notebooks which indicates authorship. Such lettering as appears thereon is merely such as might appear upon any blank book or similar article. The collector has found that they are in chief value of paper, and hence they were properly classified as manufactures of paper.

The judgment of the court below is therefore *reversed* and the cause *remanded*.